Next case called for of argument is Henry Commitment of Hydron. Counsel. Thank you, your honor. May it please the court, for the audio recording, I'm Curtis Blood. My client is Kyle Hydron. He's a prisoner under the Sexually Violent Persons Commitment Act at Rushville, Illinois, and I'm appointed to represent him. I was not his trial counsel. He had a previous appeal to this court. That was from the original finding that he was a sexually violent person and his commitment to the Department of Human Services. I was not his counsel on that appeal. If Kyle Hydron gets what he wants, he will be walking down the street with debris in his hair, but that's not what this case sets up for us to ask this court for. The best we can do is ask that this court remand this matter so that he can have an expert appointed to interview him and to support his case, and then so that he can have a hearing on his petition for discharge from the Department of Human Services. That's why we're here. Mr. Blood, what statutory right does he have to have an expert appointed to evaluate him? I wouldn't say that he does have a right, your honor. I wouldn't say that he does. The court can appoint. And did. And did, yes. The court made some determination at some point that an expert was appropriate. And he then, and Littman, the doctor, interviewed him. But for some reason, Kyle did not like Dr. Littman. So your position is he does have a right to a second opinion if he doesn't like the first one? Not an absolute right, certainly. But in this case, all he wanted was his first expert back. He didn't ask for his first expert. He asked for Dr. Littman. True, and he got Dr. Littman. Right. He didn't like Dr. Littman, so he asked for Dr. Witherspoon. Well, and I understand he probably would have liked Dr. Witherspoon because he testified originally in such a way that he probably would have preferred him. But let's say if he asked for somebody other than Dr. Witherspoon and didn't like his or her opinion, could he then again ask for another appointment? Where does it end is what I'm saying. Well, even if at this point he had asked for just anybody else, I think it's a different case. But Dr. Witherspoon is already in the case, probably already has a file going on him. So, but on what basis, if you're saying he doesn't have a right, on what basis are you appealing the fact that the court ruled on a totally discretionary basis? Well, I couldn't argue that it was a violation of statute, so I didn't.  But what's the violation of discretion? Well, what troubled me was that he couldn't get, well, there was no trial at all, I mean, of the issue. One issue, one expert on one side, no expert on the other side, there's not a trial. But that was of his own doing, and even if the court had not given him Dr. Littman, it still would have been discretionary. And this was a reexamination, not the original hearing. That's correct. That's correct. Well, and as an aside, I don't see how it was discretionary, Your Honor. I mean, no evidence was taken on this matter. The judge just heard arguments, that's what the record says, and said no. Actually, we don't even have a transcript of the hearing. And whose burden is that? Well, if you're looking at them, what could I do? A bystander's report? Well, I thought about that. I thought very hard about that. We don't even have a bystander's report, and you're a pretty experienced counsel. No, but thank you. But it's going to say the same thing, that arguments were heard. I mean, I can't... There would have been nothing to add, is what you're saying, to a bystander's report. Exactly. I look long and hard at that, but its arguments were heard. That's what the bystander's report's going to be. Well, let me ask you this. You don't have a statutory right. You could, according to this discretion, appoint an expert. I'm not sure your position would be in order to level the playing field, as far as experts are concerned. Yes. There are problems in the client's mind with the expert. Yes. And apparently, some confrontations were heard, as far as, against trial counsel's advice on some comments, which, of course, you're stuck with living with. In many ways, Your Honor. And so the court then exercises its discretion in saying, I gave you an expert. That's it. You take the expert or you leave it. Under the context, in this context, how is that failure to appoint a substitute expert without any showing of malpractice or prejudice or bias or anything? Just, I don't, I can't get along with this expert. I don't want this expert. How is that an abuse of discretion in the context of the court having exercised her discretion previously to grant an expert? Well, if I understand the question correctly, I know it's long and complicated. For starters, if I could cut it off halfway through. Sure. Due to a judge. Sure. I think it looks like Judge Schroeder's signature on the appointment of Dr. Litton. And it's definitely Judge Hightower that said no a second time. Right. But it doesn't matter much. The court's the court. But I wanted to get that straight. Ignore me, Mr. Gallardo. I'm still feeling around for the second part, Your Honor. I guess I don't understand. What should be the basis for appeal? Well, it's got to be due process. Okay, it's got to be due process. Yes, we're very good with this. It's all I've got. It's all I've got. I mean, you didn't violate the statute. She didn't, she did not violate the statute. But what is the due process? That's, I just don't get it. Well, and that's why I cited those cases. Let's say that I cited the Triggeneld case and the Cordy case. What about the Botroth case? Botroth? Well, I thought the Kane case was extremely troublesome to me. I mean, which of course cites Botroth. But that's the one that bothered me because it's from this court. And this court says, well, nothing's changed. You're not entitled to an expert. This is a subsequent proceeding and nothing has changed. And that troubled me a great deal. Well, but he did get an expert, so we're beyond that. Don't forget, he got an expert. Yes, he did. And if he was just asking for any other expert in the world, it would be a different case to me. He just wants one that says what he wants it to say. Just wants his old one back. Well, I mean, I hate to say such a trite thing in a courtroom, but it is what it is. I did not build this ship. I know. I know. I got out of the mast and sailed it in. It's the best I can do, Your Honor. It's just, darn it, it's the best I can do. Okay. Thank you for doing your job. One concern I have is court exercised its discretion, appointed an expert, a problem with the expert. Hydron wants a different expert. How far does the court have to go? Where's the stopping point? Is this analogous to a number of criminal cases where a person gets a public defender, doesn't like the public defender, wants to fire the public defender or the next public defender, and at some point the court says, this is the attorney you have or you go for a say. How far should this court go in mandating the trial court to exercise its discretion in the replacement of experts? I would say not very far, Your Honor. I'd say not very far at all. As in appointing one expert? I would say that under most circumstances, as far as the court needs to go, that it's a reasonable thing for the judge to say, if you want to choose your own expert, you hire one. And other than that, I'm in charge here and we've done the best we can. Because the state is paying for the evaluations. That's right. So presumably the second Mr. What is his name? Witherspoon? Witherspoon, I think. Witherspoon. I have to keep looking myself. Would be paid for by the state. Absolutely. It had been already. It had been the first time. Yes. I'd like to, with the court's permission, I've got a lot more time than I thought I got. You don't have to take it. That was a nice laugh. I wanted to point out something about the facts. I read my brief last night and I don't think, I didn't see it at all. I'm sorry? There's something about the facts that I think is important to this. Please go ahead. I just don't see it in my brief. I just don't see it. And that is that Kyle Heidrun was born in 1985. 1985. He's 33 years old this year. Right. Going to be 33 this year in June. The offenses that were, well, every sexually violent person has to have predicate offenses. Predicate violent offenses, sexually violent offenses. His two were juvenile offenses. The file dates on those offenses are 1999. And that struck me too, Mr. Blood. As you know, actually I think I authored the first Kyle Heidrun case, but it was actually delved into more in the record in this case, is that he actually would, like, brag about when he attended several classes, sex offender classes and was booted out of all of them in prison, but he bragged about, you know, having and wanting to have his relationships with minors continually and bragged about the fact he didn't see any problem with having, I guess, even against their, even that's essential, and bragged about rape and vampirism and some things that. Didn't brag about that, Your Honor. He had an explanation for that. He said that he was encouraged to fantasize. Well, you know the record well, Your Honor. That's correct. Anyway, so it wasn't just that he committed some acts when he was a 13-year-old and then, you know, was a model citizen and. Absolutely not, Your Honor. That wasn't my point at all. Okay. That wasn't your point? No. Okay. I missed it then. Oh, yeah, yeah. I take a while. Sometimes I like to whack the bush on all sides. Go ahead. But he, I don't want to be judged on how I was when I was 14. Well, and that's why I brought all this other stuff in. We're talking about things he's still not getting. When I was 26, I graduated law school and got married, and I don't want to be judged on how I was when I was 26 either. There's clearly a continuing pattern for this guy. It's not like he graduated law school and did some remarkably thing different. No. I mean, I was struck by the age as well, how long he's been in the system. But as Justice Chapman indicated, there's this ongoing pattern that actually seems to be getting worse instead of better. But if you look at his original offense, which is bad enough, his sexual contact is relative. But I just don't see how you can argue under these circumstances abusive discretion. And more importantly, I think what you were getting to is, look, he's been in the system a long time. He needs to have his due process heard. I think there's ample evidence that he's had that opportunity. And, Your Honor, that may be, and that is for you to say. But I do want to point out that, and, of course, obviously you know the case, obviously you've read the briefs, and obviously you've read the extended setting forth of what Kyle Hyden said. And I wanted you to know, I wanted you to understand a little bit about Kyle Hyden and about how he sees things. But the person who's trying to get rid of his expert and trying to get another expert is this person who's been basically behind bars since he was 14. Well, we understand his motivation. Well, it's just that he's not a, this is not even a, it's not a mature person committing these acts, but it's also not a mature person making this request. Why do you say that? Because, in fact, being in the system, he can be gaining the system. I mean, he has access to people who have, as we call them, the jailhouse lawyers. Why do you say he's immature or tell us he's immature? Well, because, Your Honor, he's fired his expert. He's fired Dr. Lynn. Yeah, for good reasons. He didn't like what she said. That's a smart move. I mean, would you put on an expert if you knew the expert was going to testify against you or not support your position? No. No. Well, we don't know that. But I'm just, all I'm saying is that he. But this is the person he originally asked for. Well, the late John Delaney asked for. Well, whomever asked. Bless his heart. Bless his heart. But, yeah, I'm just saying that that, that the court. You're saying that what his, actually, by virtue of his making this request as an exhibit of maturity level in and of itself, is that. Well, I know that I was hoping that the court would take that into account. The court would take that into account in considering that he's asking for remand with a new expert, with his old expert back. That's the best that I can put on it. Okay. Thank you, Your Honors. I want to comment first. I appreciate the length of the candor of your factual statement in giving us the full background of this individual's history. So I'm going to compliment you on that and thank you. Thank you, Your Honor. Counsel? Good morning. May it please the Court, Counsel? I'm Assistant Attorney General Catherine Dorsch for the People. As Counsel pointed out, these were discharge proceedings under the Act. So we're not. The issue before the Court was not whether respondents should have been adjudicated as sexually violent persons. That point is the point from which we depart. This Court affirmed that judgment of commitment on direct abuse. So the question was whether there was probable cause to believe that Mr. Hydren's condition had so changed that he was no longer a sexually violent person. Now, discharge proceedings under Section 55, the Court does have discretion. The statute says may appoint an expert, and the Supreme Court has construed that to say that the Circuit Court has discretion to appoint an expert. So there's no, although there's been some talk about a level playing field, there's no level playing field doctrine here. The appointment of an expert for discharge and post-commitment proceedings is governed by that statute in the discretionary appointment. I submit that if a court has discretion to appoint an expert in the first place, then the court would have discretion to replace an expert for good cause shown. But I also submit that Mr. Hydren's motion, which essentially alleged that he didn't like Dr. Litton's demeanor, that she was too sunny, that she gave him a pep talk and engaged in jocular activities, and that in his lay opinion she didn't administer any kind of empirical testing, did not rise to the level of abusive discretion for the court to deny that motion. Would, in order to appoint a succeeding expert... I'm sorry. I'm sorry. In order to appoint a new expert, would the court have to find good cause, or could the court in its exercise of discretion say, yes, you're, you know, I'm going to appoint a new expert? Yes, the court could exercise its discretion. The court could have exercised its discretion to appoint one without anything. Yes, for abusive discretion, the court would have to find that the court's refusal to do so was arbitrary. Oh, I realize that. But you mentioned for good cause shown, the court could appoint a new expert. Would the court have to find good cause shown? Initially? Yeah. No, for a secondary expert. Discretion, we don't really know, no. It just is made. There's nothing to guide the court's discretion here. As a court held in Beautrip that it wasn't an abusive discretion where the respondent had offered no basis really to rebut the state expert's opinion, and the other part was that he hadn't participated in any treatment. And this court also, in in-rate detention of Cain, followed Beautrip and said Mr. Cain, who also hadn't offered any allegation that his condition had changed or that he had any basis to rebut the state's expert's opinion, that he also had not participated in treatment, that it was not an abusive discretion to deny the appointment of an expert. And so I submit that that same standard should govern here and that Mr. Hydren's allegation said in his lay opinion he didn't like Dr. Litton, and that he didn't, it just simply wasn't enough to warrant or require an appointment of an expert. Could the court have done so? Yes. Could this court decide, you know, if in the first instance, this court might have granted Mr. Hydren's motion, but the circuit court was not required to, was not of use of discretion to deny that motion. In fact, I submit that, you know, if these allegations in Mr. Hydren's motion, that he didn't like Dr. Litton, and that she didn't, in his lay opinion, whether doing a good job was sufficient to require the circuit court to appoint a new expert, the circuit court would be required pretty much in every case to appoint a new expert until the respondent found one he liked or whose opinion he approved of and felt that he could present to the court. Here, Mr. Hydren had an expert. She was appointed for him. The county paid for her. She came in from Wisconsin. She interviewed him. He didn't present her testimony at the hearing on his discharge petition. We don't know why, but he could have. And the circuit court didn't abuse its discretion in denying this motion to replace her. So if the court has no questions, we'd ask that this court affirm the circuit court's judgment. Thank you, counsel. Counsel? We appreciate the briefs and arguments of counsel, and we'll take the case under advisement and issue a ruling in due course.